UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE M. ALEXANDER,

        *Plaintiff,*

    *v.*

EDWARD NIETZEL,

        *Defendant.*

_____/

CASE NO. 16-cv-12071
DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 12)**

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Nietzel's Motion for Summary Judgment, (Doc. 12), be **DENIED**.

## II.   REPORT

### A.   Introduction

Plaintiff D'Andre Marquis Alexander ("Alexander") is a state prisoner who filed a *pro se* complaint under 42 U.S.C. § 1983 on June 6, 2016 alleging "retaliation for engaging in protected conduct, cruel and unusual punishment, excessive force, and deliberate indifference" against Defendant Edward Nietzel ("Nietzel"). (Doc. 1 at 1). On that same day, Plaintiff's application to proceed *in forma pauperis* was granted. (Doc. 2). Thereafter, Nietzel filed the instant Motion for Summary Judgment, (Doc. 12), to which Alexander

1

responded (Doc. 21) and filed a supplemental affidavit. (Doc. 22.) The case was referred to the undersigned magistrate judge on August 4, 2016. (Doc. 10).

During all times in his Complaint, Alexander was incarcerated at Saginaw Correctional Facility ("SRF"), and Nietzel was a correctional officer at SRF. (Doc. 1 at 1). Alexander does not indicate in what capacity he sues Nietzel, though he seeks a declaratory judgment and monetary damages. (*Id.*). He alleges that on May 29, 2013, he filed a grievance against Assistant Resident Unit Supervisor ("ARUS") Ann Hoffman for threatening him with "retaliation" for filing a prior grievance, saying in particular "[He] does have friends to make things happen, and [I'm] one of them." (Doc. 1 at 2) (internal quotation marks omitted). On June 6, 2013, Alexander alleges that Nietzel stopped him and "requested a personal pat down." (*Id.*). Thereafter, Nietzel's "right hand came in direct contact with [Alexander's] penis, 'grappling style,' along with his testicles," causing Alexander to "drop[] his left arm and grab[]" Nietzel's wrist. (Doc. 1 at 2-3). "At this very moment . . . Nietzel's grip became intentionally tight, pulling with a grip" such that Alexander "had to pull Nietzel's hand off his genitals." (Doc. 1 at 3). Nietzel then said "I thought you might like that." (*Id.*) (internal quotation marks omitted). After the incident, Alexander's urine "was bloody," and he was "in pain." (*Id.*).

When Alexander first requested healthcare, his "request was denied," so he "went straight to healthcare" at lunch "on his initiative . . . ." (*Id.*). He relayed his symptoms to the nurse and "gave her a urin[e] sample, which had bloody urin[e]." (*Id.*). The nurse told him "that they would be calling the hospital, but that never took place." (*Id.*). That evening, Alexander was told that healthcare wanted him to come back, where he provided a urine

2

sample under an officer's "direct supervision." (Doc. 1 at 3-4). "The urin[e] was still bloody." (Doc. 1 at 4). Nurse Gross then physically examined Alexander, and audibly noted swelling in his right testicle and bruising on his penis. After prescribing Tylenol and an ice pack, nurse Gross instructed Alexander to increase water intake and return if his pain increased, but Alexander heard her say to a nearby correctional officer that "[t]his isn't going to look good. I'll take care of it." (*Id.*). He alleges that healthcare staff then "attempted to make it seem like [he] tampered with the urin[e] sample to cover up the situation" and "falsified documents saying [he] refused to be seen . . . the next day, when [he] clearly wanted help, going out of his way to get medical treatment." (Doc. 1 at 4-5); (Doc. 1, Ex. E) (citing Alexander's "refus[al] to be seen" on June 7, 2013). Alexander points out, among other things, that healthcare "staff frequently tries to cover up things by scheduling an appointment, then saying a prisoner refused treatment," and that the actuality of his pain can be inferred from nurse Gross's advisement that he "should notify healthcare if pain increased." (Doc. 1 at 5).

The day of the alleged assault, Alexander filed a grievance. (Doc. 1 at 6). This grievance was denied, but Alexander adds allegations as to why this happened. The grievance was not referred to Internal Affairs, for instance, which Alexander attributes to a "cover-up" of "what really happened" and suggests violated prison policy. (*Id.*); (Doc. 1, Ex. F). Although Lieutenant Bond referred to inconsistencies between witness statements, (Doc. 1, Ex. E), Alexander urges that "affidavits from his witnesses that coincide with the body of the grievance" were "sent home to his sister to safeguard them." (Doc. 1 at 6). He notes as well that concerns of "self-contamination of the urin[e]," as cited in the grievance

denial, (Doc. 1, Ex. E), were unfounded because Alexander "was under direct supervision of an officer . . . ." (Doc. 1 at 6).

Alexander also alleges that his Step II grievance denial violated prison policy. The denial stated, for instance, that his appeal "was untimely," even though it "was clearly submitted on July 26, 2013," the due-date listed on the first grievance denial. (Doc. 1 at 7). The third grievance, which was timely submitted, was again wrongly denied when it upheld the Step II denial. (Doc. 1, Ex. I).

On June 20, 2013, Alexander alleges that Nietzel confronted him while passing out lunch trays, asked "was [it] worth it?" and handed him a tray with "a glob of spit" lodged inside. (Doc. 1 at 5). "Clear retaliation." (*Id.*).

### B.      Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

4

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts

5

presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C.   Analysis

In his Complaint, Alexander outlines claims for violations of his First and Eighth Amendment rights. Nietzel, in turn, offers four arguments as to why summary judgment is appropriate on these claims: (1) Alexander failed to exhaust his administrative remedies; (2) Nietzel's alleged actions lacked the severity or repetition to constitute cruel and unusual punishment; (3) the Eleventh Amendment bars Alexander's claims; and (4) in any case, Nietzel is entitled to qualified immunity. I address each argument in turn.

### 1.   Exhaustion of Administrative Remedies

Nietzel first posits that Alexander never exhausted his administrative remedies with respect to the facts contained in the Complaint. He proceeds to summarize eight unrelated grievances in detail. (Doc. 12 at ID 67-70). With respect to the relevant grievance at issue, Nietzel notes that Alexander's "Step II grievance appeal was rejected as being untimely and that rejection was upheld at Step III," and further contends that Alexander also "did not follow the procedures of the policy by filing a Step III grievance appeal prior to filing

this lawsuit." (Doc. 12 at ID 69-70). For these reasons, Nietzel asks this Court to grant summary judgment in his favor.

"State and federal prisoners desiring to bring civil rights claims are required to exhaust all available administrative remedies prior to filing suit in federal court," and the "prisoner has the burden of demonstrating that he has exhausted these remedies." *Turner v. Campbell*, 48 F. App'x 972, 973 (6th Cir. 2002). Prisons, via their grievance policies, furnish the applicable procedural rules that prisoners must follow. *See Jones v. Bock*, 549 U.S. 199, 200 (2007). "[B]efore a civil rights claim based on a grievance may be dismissed for failure to properly exhaust, prison officials must 'clearly reject[] a grievance for a reason *explicitly* set forth in the applicable grievance procedure.'" *Colen v. Corizon Med. Servs.*, No. 14-12948, 2016 WL 6653024, at *4 (E.D. Mich. Aug. 15, 2016) (quoting *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *3 (W.D. Mich. Mar. 30, 2010)).

Pursuant to MDOC policy, grievance appeals "at all steps shall be considered filed on the date *sent* by the grievant." (Doc. 12, Ex. A at 4). And when a grievance alleges "staff sexual misconduct," it "shall be referred to the Internal Affairs Division . . . even if [it] would otherwise be rejected" as untimely. (Doc. 12, Ex. A at 3). The Step II grievance denial Alexander received, however, incorrectly dismissed his appeal as untimely because "it was not mailed until the due date (July 26)" and "did not arrive until August 6, 2013." (Doc. 1, Ex. F). It also appears to refuse to refer the grievance to the Internal Affairs Division. (*Id.*). Although Nietzel says Alexander never appealed his grievance to Step III, Alexander plainly attached a Step III grievance denial to his Complaint. (Doc. 1, Ex. I).

7

Confoundingly, Nietzel flatly contradicts his own assertion by noting that the Step II rejection "was upheld at Step III." (Doc. 12 at ID 69).[1]

Because Alexander pursued the subject grievance diligently and in accordance with prison policies—with which he, ironically, enjoys more familiarity than the grievance coordinator or the warden—he has properly exhausted his administrative remedies and may maintain his suit in this Court. Nietzel's argument on this count should fail.

### 2.      Eighth Amendment Violation

Nietzel concedes that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." (Doc. 12 at ID 72-73) (internal quotation marks omitted). He supposes, however, that Nietzel's alleged sexual assault did not impinge on Alexander's constitutionally protected right to be free from cruel and unusual punishment. In his Response, Alexander suggests that "[t]his is an absurd argument, and it's hard to believe that counsel posses[s]ed the audacity to make such a statement." (Doc. 21 at 4).

In *Jackson v. Madery*, the Sixth Circuit affirmed that Eighth Amendment claims must surpass two hurdles: (1) "the alleged force should be 'objectively harmful enough to establish a constitutional violation'"—that is, harmful enough to contravene "contemporary standards of decency"—and (2) "the official must have acted with a

---

[1] I could not find any indication of when Alexander submitted his Step III grievance appeal in the record, but the denial he received addressed the merits of his appeal without mentioning untimeliness. Nor does Nietzel contend that Alexander's Step III appeal was untimely or otherwise defective. Therefore, this Court will consider the appeal to be procedurally proper. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.").

sufficiently culpable state of mind." 158 F. App'x 656, 661 (6th Cir. 2005) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9. Moreover, "a prison official who sexually abuses a prisoner can be found to have a sufficiently culpable state of mind to violate the prisoner's constitutional rights." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). Eighth Amendment protection will not, however, condemn "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (internal quotation marks omitted).

Nietzel's argument likens his alleged conduct to that of the defendants from *Boddie* and *Jackson*. In *Boddie*, the plaintiff complained of a female guard squeezing his hand, touching his penis, making sexually suggestive comments, and pinning him to a door with her body—the court found that such conduct did "not involve a harm of federal constitutional proportions as defined by the Supreme Court." 105 F.3d at 860. Similarly, the *Jackson* defendant grabbed the plaintiff's buttocks "in a degrading and humiliating manner during a 'shakedown' in the prison food area." 158 F. App'x at 661. Though it labeled such actions worthy of condemnation, the court nevertheless found them constitutionally insignificant to qualify as cruel and unusual punishment. The alleged misconduct at issue here, however, differs insofar as Nietzel inflicted *tangible harm* on Alexander, resulting in documented injuries. (Doc. 1, Ex. A). As alleged, and if true, there seems little doubt that Nietzel's conduct would violate the Eighth Amendment.

9

In any case, there remain numerous genuine issues of material fact as to the existence or extent of these injuries, as well as Nietzel's conduct. Submitted alongside Nietzel's Motion is his affidavit swearing to the falsity of Alexander's allegations, as well as evidence that Alexander was put on modified access to the grievance process for filing an unfounded grievance which may have resulted in disciplinary action against Nietzel (Doc. 12, Ex. E). But Alexander's sworn allegations assert just the opposite. And security footage, which offers a grainy and distant picture of the incident, fails to confirm or deny either account. (Doc. 12, Ex. F). As such, summary judgment on this ground would be inappropriate.

### 3.       Eleventh Amendment Immunity

As Nietzel notes, Alexander's Complaint does not indicate "the capacity in which he is suing" Nietzel. (Doc. 12 at ID 80). Though requesting monetary damages constitutes "one factor that might place an individual on notice it is not sufficient." (Doc. 12 at ID 81) (quoting *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002)) (internal quotation marks omitted). As a result, Nietzel suggests that the Court "must assume that [he is] being sued in [his] official capacit[y]." (Doc. 12 at ID 80) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001)) (internal quotation marks omitted).

"[I]f a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim," the Eleventh Amendment prohibits a federal court from "awarding damages against the state treasury even though the claim arises under the Constitution." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While this rule would bar suit against the MDOC itself, see *O'Brien v. Michigan Dept. of Corrs.*, 592 F. App'x 338, 341 (6th Cir.

10

2014), it would not necessarily bar certain non-monetary remedies against state officials acting in their official capacity. *Accord Pennhurst*, 465 U.S. at 120. It also presents no impediment to recovery against a state official in his individual capacity if no qualified immunity is found. However, "because the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees," Federal Rule of Civil Procedure 9(a) requires that plaintiffs "properly allege capacity in their complaint." *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989).

In the Sixth Circuit, failure to expressly delineate capacity need not deflate a suit *ab initio*, so long as "the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). Courts consider "the nature of the plaintiff's claims, requests for compensatory or punitive damages, . . . the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. . . . [and] whether subsequent pleadings put the defendant on notice of the capacity in which he or she is being sued" in determining whether the defendant received sufficient notice of an individual capacity suit. *Shepherd*, 313 F.3d at 968.

The course of proceedings in this case provided notice to Nietzel that Alexander intended to sue him in his individual capacity. As in *Moore*, the Complaint's caption lists only Nietzel's name, and not his "official title[]." *Moore*, 272 F.3d at 773. Indeed, Nietzel is the *only* defendant. The Complaint includes an incomplete sentence on the first page that reads "[Nietzel] is being sued in his," and appears to end abruptly due to a technical error

11

that cut off the remaining text—this, too, would likely have created the inference that an assertion as to capacity followed. In addition, Alexander includes a demand for "damages," and Nietzel asserted the defense of qualified immunity (discussed below), all of which tends to show that Nietzel was "aware of potential liability in his individual capacity." *Buchanan v. Metz*, 6 F. Supp. 3d 730 (E.D. Mich. 2014). Unlike *Shepherd*—in which the only indication of an individual capacity suit was a demand for damages—the course of proceedings at issue carries more pervasive signatures of an individual capacity action. *Accord Garcia v. Dykstra*, 260 F. App'x 887, 895 (6th Cir. 2008) ("[T]he demand for money damages, along with something more, here the qualified immunity defense asserted in the answer and amended answer, demonstrates that [Defendants] were aware of potential liability in their individual capacities.").

For these reasons, Eleventh Amendment immunity will not guard Nietzel from liability in his individual capacity.

### 4.    Qualified Immunity

In carrying out their duties, state employed correctional officers "enjoy the protections of qualified immunity . . . ." *McKnight v. Rees*., 88 F.3d 417, 419 (6th Cir. 1996). Nietzel invokes this immunity as a defense to Alexander's suit. (Doc. 12 at ID 81-83). To surmount this defense, Alexander must establish: (i) that the facts alleged show that Nietzel's conduct violated his constitutional right, (ii) that the right violated was clearly established, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and (iii) that Nietzel reasonably should have known that his conduct violated clearly established law. *Doe v. Sullivan Cty., Tenn.*, 956 F.2d 545, 554 (6th Cir. 1992).

12

Alexander makes out two claims: one grounded on cruel and unusual punishment under the Eighth Amendment, and the other focused on retaliation for the filing of formal grievances in the form of sexual abuse and tampering with his cafeteria food. As discussed above, Nietzel's alleged conduct could violate Alexander's Eighth Amendment rights, and there remain genuine issues of material fact as to what actually transpired, which precludes summary judgment as to this issue. Few would seriously contend, as Nietzel does, that reasonable correctional officers might disagree as to whether groping someone forcefully enough to cause injury violates that person's constitutional rights. *See, e.g.*, *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013) ("[S]exual assaults . . . are clearly established violations of . . . constitutional rights . . . ."). Therefore, qualified immunity will not guard against liability for this conduct.

Alexander's retaliation claim is also robust enough to withstand summary judgment. "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action [was] motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Sixth Circuit has held that proper usage of an inmate grievance procedure is protected conduct. *E.g. Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."). Further, a shakedown accompanied by sexual violence, or the threat thereof, would deter a person of ordinary firmness from engaging in this protected conduct. *Cf. Reynolds-Bey v.*

13

*Harris*, 428 F. App'x 493, 503-04 (6th Cir. 2011) ("A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard. Here, however, [Plaintiff] further asserts that [Defendant] 'use[d] . . . racial threats to advocate physical violence.'") (internal citations omitted). Alexander's sworn allegations as a whole also establish causation, for he contends that filing a grievance against ARUS Hoffman "triggered [Nietzel's] sexual assault," as evidenced by Nietzel's later question—"was [it] worth it?"— to Alexander before passing him a tainted cafeteria tray. As a result, Alexander makes out a prima facie claim for retaliation in violation of the First Amendment. Accordingly, Nietzel would not enjoy qualified immunity on this count either.

### D. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Nietzel's Motion for Summary Judgment, (Doc. 12), be **DENIED**.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some

14

objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 9, 2017                          S/ PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to D'Andre M. Alexander #731077 at Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

Date: February 9, 2017                           By s/Kristen Castaneda
                                                 Case Manager

15