**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

D'ANDRE M. ALEXANDER,

    *Plaintiff,*

                                CASE NO. 2:16-cv-12071

*v.*

                                DISTRICT JUDGE NANCY G. EDMUNDS
EDWARD NIETZEL,              MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. 42)**

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 42), be **DENIED**.

### II.    REPORT

#### A.    Introduction

Plaintiff D'Andre Marquis Alexander is a state prisoner who filed a *pro se* complaint under 42 U.S.C. § 1983 on June 6, 2016 alleging "retaliation for engaging in protected conduct, cruel and unusual punishment, excessive force, and deliberate indifference" against Defendant Edward Nietzel. (Doc. 1 at 1). On that same day, Plaintiff's application to proceed *in forma pauperis* was granted. (Doc. 2). Thereafter, Defendant filed the instant Motion for Summary Judgment, (Doc. 12), to which Plaintiff responded. (Doc. 21). The case was referred to the undersigned magistrate judge on August 4, 2016, (Doc. 10), and

1

on February 9, 2017, I recommended that Defendant's Motion be denied, (Doc. 23). Defendant brought the instant Motion for Summary Judgment on April 27, 2018, (Doc. 42), and Plaintiff responded on June 8, 2018, (Doc. 47). Accordingly, Defendant's Motion is ripe for report and recommendation.

The facts in this case have not changed. During all times in his Complaint, Plaintiff was incarcerated at Saginaw Correctional Facility ("SRF"), and Defendant was a correctional officer at SRF. (Doc. 1 at 1). Plaintiff does not indicate in what capacity he sues Defendant, though he seeks a declaratory judgment and monetary damages. (*Id.*). He alleges that on May 29, 2013, he filed a grievance against Assistant Resident Unit Supervisor ("ARUS") Ann Hoffman for threatening him with "retaliation" for filing a prior grievance, saying in particular "[He] does have friends to make things happen, and [I'm] one of them." (Doc. 1 at 2) (internal quotation marks omitted). On June 6, 2013, Plaintiff alleges that Defendant stopped him and "requested a personal pat down." (*Id.*). Thereafter, Defendant's "right hand came in direct contact with [Plaintiff's] penis, 'grappling style,' along with his testicles," causing Plaintiff to "drop[] his left arm and grab[]" Defendant's wrist. (Doc. 1 at 2-3). "At this very moment . . . [Defendant's] grip became intentionally tight, pulling with a grip" such that Plaintiff "had to pull [Defendant's] hand off his genitals." (Doc. 1 at 3). Defendant then said "I thought you might like that." (*Id.*) (internal quotation marks omitted). After the incident, Plaintiff's urine "was bloody," and he was "in pain." (*Id.*).

When Plaintiff first requested healthcare, his "request was denied," so he "went straight to healthcare" at lunch "on his initiative . . . ." (*Id.*). He relayed his symptoms to

the nurse and "gave her a urin[e] sample, which had bloody urin[e]." (*Id.*). The nurse told him "that they would be calling the hospital, but that never took place." (*Id.*). That evening, Plaintiff was told that healthcare wanted him to come back, where he provided a urine sample under an officer's "direct supervision." (Doc. 1 at 3-4). "The urin[e] was still bloody." (Doc. 1 at 4). Nurse Gross then physically examined Plaintiff, and audibly noted swelling in his right testicle and bruising on his penis. After prescribing Tylenol and an ice pack, nurse Gross instructed Plaintiff to increase water intake and return if his pain increased, but Plaintiff heard her say to a nearby correctional officer that "[t]his isn't going to look good. I'll take care of it." (*Id.*). He alleges that healthcare staff then "attempted to make it seem like [he] tampered with the urin[e] sample to cover up the situation" and "falsified documents saying [he] refused to be seen . . . the next day, when [he] clearly wanted help, going out of his way to get medical treatment." (Doc. 1 at 4-5); (Doc. 1, Ex. E) (citing Plaintiff's "refus[al] to be seen" on June 7, 2013). Plaintiff points out, among other things, that healthcare "staff frequently tries to cover up things by scheduling an appointment, then saying a prisoner refused treatment," and that the actuality of his pain can be inferred from nurse Gross's advisement that he "should notify healthcare if pain increased." (Doc. 1 at 5).

The day of the alleged assault, Plaintiff filed a grievance. (Doc. 1 at 6). This grievance was denied, but Plaintiff adds allegations as to why this happened. The grievance was not referred to Internal Affairs, for instance, which Plaintiff attributes to a "cover-up" of "what really happened" and suggests violated prison policy. (*Id.*); (Doc. 1, Ex. F). Although Lieutenant Bond referred to inconsistencies between witness statements, (Doc.

3

1, Ex. E), Plaintiff urges that "affidavits from his witnesses that coincide with the body of the grievance" were "sent home to his sister to safeguard them." (Doc. 1 at 6). He notes as well that concerns of "self-contamination of the urin[e]," as cited in the grievance denial, (Doc. 1, Ex. E), were unfounded because Plaintiff "was under direct supervision of an officer . . . ." (Doc. 1 at 6).

Plaintiff also alleges that his Step II grievance denial violated prison policy. The denial stated, for instance, that his appeal "was untimely," even though it "was clearly submitted on July 26, 2013," the due-date listed on the first grievance denial. (Doc. 1 at 7). The third grievance, which was timely submitted, was again wrongly denied when it upheld the Step II denial. (Doc. 1, Ex. I).

On June 20, 2013, Plaintiff alleges that Defendant confronted him while passing out lunch trays, asked "was [it] worth it?" and handed him a tray with "a glob of spit" lodged inside. (Doc. 1 at 5). "Clear retaliation." (*Id.*).

### B. Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court

may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C.   Analysis

Defendant's instant Motion asserts, once again, the argument that Plaintiff failed to exhaust his administrative remedies with respect to the groping incident and the "glob of spit" incident. (Doc. 42). His argument cannot prevail because the law-of-the-case doctrine precludes reconsideration of this issue.

As a general principle, the law of the case dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This rule remains subject to a court's discretion, and the following circumstances may justify reconsidering an earlier-decided issue: (1) "substantially different evidence is raised on subsequent trial"; (2) "a subsequent contrary view of the law is decided by the controlling authority"; or (3)

"a decision is clearly erroneous and would work a manifest injustice." *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

Defendant's recent filing does not present new evidence to this Court, nor does it contend that the law has changed in the interim between this moment and the moment my February 9, 2017 recommendation issued. Indeed, Defendant does not acknowledge the law-of-the-case doctrine at all. The argument he presents, however, would seem to suggest he believes my prior finding that Plaintiff exhausted his administrative remedies to be clearly erroneous. It is not.

At the outset, I note that Plaintiff does not equate Defendant's allegedly spitting on his food tray with a constitutional violation; he highlights the interaction as evidence of Defendant's retaliatory motive for the alleged groping incident. He did not need to file a grievance based on this fact to include it in a Complaint. *Accord, e.g.*, *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance is not a summons and complaint that initiates adversarial litigation.").

Moreover, Defendant's argument lacks merit insofar as it asks too much of grievants. The most on-point case Defendant cites is *Jordan-El v. Harrington*, No. 2:06-CV-10431, 2006 WL 1791261 (E.D. Mich. June 26, 2006). In *Jordan-El*, this Court found that a fully-appealed grievance that explicitly cited the Eighth Amendment—but not the First Amendment—had only exhausted administrative remedies as to the Eighth-Amendment claim, reasoning that "[s]ince retaliation is a separate form of misconduct or mistreatment, the Plaintiff was required to give prison officials fair notice of a First Amendment retaliation claim." *Id.* at *3. The following year, however, the Supreme Court

7

denigrated the legitimacy of this rationale, noting that while the "Sixth Circuit rule may promote early notice to those who might later be sued," the "'primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]'" *Jones v. Bock*, 549 U.S. 199, 219 (2007) (quoting *Johnson*, 385 F.3d, at 522)); *see also Moffat v. Michigan Dep't of Corr.*, No. 09-14696, 2010 WL 3905354, at *2 (E.D. Mich. Sept. 27, 2010) ("[T]he primary purpose of the exhaustion requirement is not notice—it is not intended to substitute either the summons or the complaint."). In the instant case, Plaintiff filed the grievance at issue the day of the alleged groping incident. To suggest that he should have intuited a stranger's motives at the very moment of his mischief is to demand from an ordinary man the skill of supernatural foresight. Indeed, the MDOC does not appear to require this of prisoners. *See Reed-Bey v. Lewis*, No. 13-10168, 2016 WL 5109542, at *3 (E.D. Mich. Aug. 22, 2016) (noting that according to the MDOC policy at issue, "'a grievant need only "object intelligibly to some asserted shortcoming" and need not "lay out facts, articulate legal theories, or demand particular relief,"'" (quoting *Davison v. MacLean*, 2007 WL 1520892, at *5 (E.D. Mich. 2007))"), *R. & R. adopted*, No. 13-10168, 2016 WL 5071197 (E.D. Mich. Sept. 20, 2016).

Defendant also cites *Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350 (E.D. Mich. Oct. 11, 2013), *aff'd* (June 18, 2014), for the proposition that specific legal theories arising out of the same factual nexus must all be exhausted before they may be asserted in court. The situation in *Ward,* however, remains factually distinct from the instant case. In *Ward*, the plaintiff exhausted a grievance alleging the defendant had interfered with his

8

yard time, but sought redress in the complaint for a later incident in which the defendant allegedly retaliated against him for filing that grievance. *Id.* at *2. As the court noted, the grievance plaintiff exhausted could not preemptively exhaust later events. *Id.* By comparison, the legal claims Plaintiff asserts in the instant case flow from the same facts complained of in the grievance at issue. *Accord, e.g.*, *Diaz v. Rutter*, No. 2:05-CV-239, 2006 WL 3370875, at *4 (W.D. Mich. Nov. 20, 2006) ("[T]here is no requirement that a prisoner must exhaust specific legal theories."). To find otherwise would, on the one hand, reward conspiratorial misconduct in which the tortfeasor cloaks his intent to confound the victim and hamper her recovery. And on the other hand, prisoners should not feel compelled to include baseless or frivolous allegations in grievances simply for fear that the rigidity of a court's exhaustion standards may prevent the due consideration of evidence not yet available.

### D. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 42), be **DENIED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 10, 2018           S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 10, 2018                                   By s/Kristen Castaneda
                                                                 Case Manager